## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROCK FERRONE and ROCK AIRPORT
OF PITTSBURGH, L.L.C.,

      Plaintiffs,

    v.

DAN ONORATO, individually and
officially, DENNIS DAVIN, individually and
officially, MAURICE STRUL, individually
and officially, ALLEGHENY COUNTY,
REDEVELOPMENT AUTHORITY OF
ALLEGHENY COUNTY, BRIAN D. CLARK,
BRIAN D. CLARK & ASSOCIATES,
MICHAEL YABLONSKI, KEVIN MCKEEGAN,
MEYER, UNKOVIC & SCOTT, L.L.P.,
ALFRED A. KUEHN, MANAGEMENT
SCIENCE ASSOCIATES, INC.,

      Defendants.

Civil Action No.

### COMPLAINT IN CIVIL ACTION

AND NOW, come the Plaintiffs, Rock Ferrone and Rock Airport of

Pittsburgh, L.L.C., by and through their attorneys, TARASI, TARASI & FISHMAN, P.C.

and Gianni Floro, Esquire, and file this Complaint in Civil Action, and aver as follows:

**A.**    **Nature of Action**

    1.    The Plaintiff, Rock Ferrone (hereinafter, "Ferrone"), is the managing

member and/or president of the Plaintiff, Rock Airport of Pittsburgh, L.L.C.

    2.    The Plaintiff, Rock Airport of Pittsburgh, L.L.C. (hereinafter, "RAP"), owns

and operates an airport in West Deer Township, Allegheny County, Pennsylvania.

    3.    The Plaintiff alleges a continuing pattern or practice by Allegheny County

(hereinafter, the "County") officials and County employees, specifically the Chief

Executive, Dan Onorato (hereinafter, "Onorato"), the Director of Economic Development, Dennis Davin (hereinafter, "Davin"), the Assistant Director of Economic Development Maurice Strul (hereinafter, "Strul"), and the Redevelopment Authority of Allegheny County (hereinafter, "RAAC") officials and RAAC employees, specifically, its Executive Director, Davin, rising to the level of government custom, practice and policy under the color of state law, which violates the Plaintiffs' civil rights.

4.     The Plaintiffs, upon information or belief, believe, and therefore allege, a conspiracy between Onorato, Davin, Strul, Brian D. Clark, Michael Yablonski and Kevin McKeegan, Alfred A. Kuehn and other persons presently unknown to the Plaintiffs, to violate their civil rights by and among the several Defendants and other persons presently unknown to the Plaintiffs, which include those acting under the color of state law.

5.     The Plaintiffs allege that those with the power and authority to prevent the violation of their civil rights, specifically, Chief Executive Onorato, Director/Executive Director Davin, Assistant Director Strul and other persons presently unknown to the Plaintiffs, have failed to so act.

6.     The Plaintiffs allege that the government Defendants have violated:

        a)     Their First Amendment right of privacy;

        b)     their Fourth Amendment right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures; which is violation of their right to privacy"

        c)     their Fourteenth Amendment right:

            i)     not to be deprived of "life, liberty, or property,

without due process of law;"

 ii) nor to be deprived of the "equal protection of the laws" without a rational basis;

 iii) which is a violation of their right to privacy;

d) and other rights as guaranteed by the Constitution of the United States of America;

e) as well as similar protections afforded under the Constitution of the Commonwealth of Pennsylvania, including those protections afforded in Article I, Sections 1, 2, and 8 and 26; including their *increased* right to privacy;

f) and those rights protected by 42 U.S.C. §§ 1983, 1985 and 1986.

7. The Plaintiffs allege that the several Defendants have committed various tortious acts, as defined by Pennsylvania common law, against them.

8. The Plaintiffs seek an award of damages as relief for these violations of their civil rights and as a result of the tortious conduct of the several Defendants, as well as injunctive relief ordering the government Defendants to cease their unconstitutional conduct as it relates to the Plaintiffs.

**B. Jurisdiction**

9. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

10. The amount in controversy exceeds $75,000, exclusive of costs, interest and attorneys fees.

11.    The claims for relief and causes of action alleged herein arise under the

First, Fourth and Fourteenth Amendments of the United States Constitution, and under

42 U.S.C. §§ 1983, 1985 and 1986, and therefore the Plaintiffs' claims come within this

District Court's "Federal Question Jurisdiction."

12.    There are also claims for relief under Article I, Sections 1, 2, and 8 and 26

the Constitution of the Commonwealth of Pennsylvania, and under the common law of

the Commonwealth of Pennsylvania, and therefore the Plaintiffs' claims come within

this District Court's "Supplemental Jurisdiction."

13.    The various acts, omissions and conspiracies alleged herein were

engaged in and carried out by, between and among the individual Defendants, while

some of said Defendants were employed by the County and RAAC, or while others

served as officers of private corporations or other entities, some served in elected or

appointed capacities as officials of the County and RAAC with policymaking and/or

supervisory authority over the Office of the Chief Executive, the Department of

Economic Development and the Administration of RAAC, and the other private

individuals exercised authority by way of their conspiracy with the government agents

and/or as employees of the Defendants, all acting under the color of state law.

14.    The various acts, omissions and conspiracies alleged herein were

engaged in and carried out by officials and employees of the County and RAAC, acting

by and through their employees and officials under the color of state law, pursuant to

government custom, practice and policy which was so pervasive, permanent and well

settled that it constituted practice or policy which had the force and effect of law.

15.    Various acts and conspiracies alleged herein were engaged in and carried

4

out by officials and employees of the County and RAAC, acting in their official capacities, in concert, agreement and common purpose with, and at the instigation, urging and support of, the various individual Defendants, acting in their individual capacities.

16.     There was no reasonable basis for the various acts and conspiracies alleged herein.

**C.     Parties**

17.     The Plaintiff, Ferrone, is an adult individual, who resides at 28 Lakeview Drive, Cheswick, Allegheny County, Pennsylvania, 15024.

18.     The Plaintiff, RAP, is a Limited Liability Company, possessing the corporate power to sue and be sued, located at 1000 Rockpointe Boulevard, Pittsburgh, Allegheny County, Pennsylvania 15084.

19.     RAP is primarily owned, managed and controlled by the Plaintiff, Ferrone.

20.     The Defendant, Onorato, is an adult individual whose office is located at 101 County Courthouse, 436 Grant Street, Pittsburgh, Allegheny County, Pennsylvania 15219.

21.     Mr. Onorato is and has been the Chief Executive of the County for most of the time relevant to this complaint.

22.     The Chief Executive of the County, has the statutory authority to supervise and control employees of the County.

23.     Mr. Onorato is being sued individually and in his official capacity.

24.     The Defendant, Davin, is an adult individual whose office is located at 425 Sixth Avenue, Suite 800, Pittsburgh, Allegheny County, Pennsylvania 15219.

25.   Mr. Davin is and has been the Director of the Department of Economic Development of the County and the Executive Director of RAAC for most of the time relevant to this complaint.

26.   The Director of Economic Development, has the statutory authority to supervise and control the Department of Economic Development of the County and also serves as the Executive Director of RAAC.

27.   Mr. Davin is being sued individually and in his official capacity.

28.   The Defendant, the County, has its office located at 101 County Courthouse, 436 Grant Street, Pittsburgh, Allegheny County, Pennsylvania  15219.

29.   The County is a political subdivision of the Commonwealth of Pennsylvania, duly organized as a county possessing the corporate power to sue and be sued.

30.   The County is vested with the governance and management of the County Department of Economic Development, which administers RAAC, with the supervision, management and training of the individuals employed with each of these respective agencies.

31.   The Defendant, RAAC, is a public body and a body corporate and politic created pursuant to the "Urban Redevelopment Act" of 1945, as amended, with the power to sue and be sued as provided in 35 P.S. § 1709(q).

32.   The Defendant, Strul, is an adult individual whose office is located at 425 Sixth Avenue, Suite 800, Pittsburgh, Allegheny County, Pennsylvania 15219.

33.   The Defendant, Strul, is the Assistant Director of the County Department of Economic Development.

34. The Defendant, Brian D. Clark (hereinafter, "Clark"), is an adult individual whose office is located at 141 Oak Manor Drive, Natrona Heights, Allegheny County, Pennsylvania 15065.

35. The Defendant, Brian D. Clark & Associates (hereinafter, "BCA"), is Pennsylvania corporation with its registered office located at 141 Oak Manor Drive, Natrona Heights, Allegheny County, Pennsylvania 15065.

36. The Defendant, Brian D. Clark, is the President of Brian D. Clark and Associates.

37. The Defendant, Michael Yablonski (hereinafter, "Yablonski"), is an adult individual whose office is located at 1300 Oliver Building, Pittsburgh, Allegheny County, Pennsylvania 15222.

38. The Defendant, Kevin McKeegan (hereinafter, "McKeegan"), is an adult individual whose office is located at 1300 Oliver Building, Pittsburgh, Allegheny County, Pennsylvania 15222.

39. The Defendant, Meyer, Unkovic & Scott, L.L.P. (hereinafter, "MUSL"), is a Pennsylvania Limited Liability Partnership with its registered offices located at 1300 Oliver Building, Pittsburgh, Allegheny County, Pennsylvania 15222.

40. The Defendant, Alfred A. Kuehn (hereinafter, "Kuehn"), is an adult individual whose office is located at 6565 Penn Avenue, Pittsburgh, PA 15206.

41. The Defendant, Management Science Associates, Inc. (hereinafter, "Management Science"), is a Pennsylvania Corporation with its registered offices located at 6565 Penn Avenue, Pittsburgh, PA 15206.

42. The Defendant, Alfred A. Kuehn, is the President of Management

7

Science.

**D.      Facts Common to All Causes of Action:**

43.      The various acts, omissions and conspiracies alleged herein to have been committed are a part of a wrong wrought upon the Plaintiffs by the Defendants which began on or about November 2003, and continues to the present.

44.      RAP and Mr. Ferrone have developed the former West Penn Airport, a small airport in West Deer Township, Allegheny County, and its adjacent surrounding properties into a "business airpark" known as "RockPointe Business Park."

45.      The official status of the airport is also being upgraded to that of a "General Aviation" airport.

46.      As part of the site development, the Plaintiffs hired S.E. Technologies, Inc. (hereinafter, "SETech") to perform engineering work under a "not to exceed" contract of two-hundred-ten-thousand dollars ($210,000.00).

47.      A portion of the work was to be paid for by public funding, *e.g.*, infrastructure, and so the Plaintiffs required that any change orders over the "not to exceed amount" that were to be asserted by SETech, first required approval by the Plaintiffs.

48.      SETech exceeded its "not to exceed contract," without first seeking such approval from the Plaintiffs, and eventually sued RAP and unaffiliated organizations, in the Court of Common Pleas of Allegheny County because RAP refused to pay its unapproved change orders.  Although SETech prevailed at trial, the matter is presently on appeal before the Superior Court of Pennsylvania.

49.      During the course of the project's development, which began in 1998,

8

RAP entered into economic development loan agreements with RAAC, and in and around the late summer of 2003 the most recent economic development agreement was negotiated and implemented. Said agreement specifically contemplated, or made as a contingency, that SETech could possibly prevail on its claims against RAP, and therefore, said loan agreement expressly provided that security for an appeal of the matter would be an eligible expense under the Cash Flow Projections at the Cash Disbursement section of its Development Costs items. In addition, since the work that SETech sought payment for was an "eligible expense" for site development purposes, payment to SETech was also available in the ordinary course of the loan's disbursement through the established requisition process.

50.    The economic development assistance received by RAP in 2003 was made available during the administration of James Roddey, the Former Chief Executive of the County.

51.    During the transition of administrations between the "Roddey administration" and the "Onorato administration," problems began to arise between the Plaintiffs and the Defendants, i.e., the County and Onorato, regarding the release of the economic development loan disbursements specifically regarding the SETech matter.

52.    In an effort to further the Plaintiffs' business interests and the public's interest in having another airport available in the County to service the public's transportation needs, the Plaintiffs had negotiated an agreement to settle the matter with SETech near the end of 2003 in the amount of three-hundred-ninety-five-thousand dollars ($395,000.00).

53.    Since the work undertaken by SETech was determined, by at the least the

9

trial court, to be due and owing, the Plaintiffs made application to the RAAC for funds to cover a letter of credit in order to settle the matter with SETech, and "Requisition # 5" was submitted by the Plaintiffs to RAAC for approval on December 12, 2003.

54.     That day, December 12, 2003, an employee of the Department of Economic Development, Jay Alt, executed a written receipt indicating that the Department of Economic Development received the requisition.

55.     Under the terms of the loan agreement between the Plaintiffs and RAAC, when a requisition was received by RAAC from the Plaintiffs, it had five (5) days to consider the requisition and either deny or approve the requisition.

55.     On January 6, 2004, the Plaintiffs were advised by the Department of Economic Development that "Requisition # 5" was lost.

56.     Upon learning that "Requisition # 5" was lost the Plaintiffs resubmitted it to the Department of Economic Development; and again the same employee of the Department of Economic Development, Jay Alt, executed a written receipt indicating that the Department of Economic Development received the requisition on January 6, 2004.

57.     On January 26, 2004, the Plaintiffs' settlement with SETech collapsed due to the failure of RAAC to pay the requisition, *i.e.*, to honor "Requisition # 5" in a timely manner, or otherwise advise the Plaintiffs of any reason whatsoever for dishonoring its contract with RAP.

58.     On February 5, 2004, Mr. Ferrone advised the Department of Economic Development that the fifty-five (55) day delay in payment of its requisition had already caused undue delay in the project; moreover, he also advised the Department of

10

Economic Development that it had also missed a pre-scheduled tele-conference, which was at the behest of the Department of Economic Development with Plaintiffs' bank, further causing undue delay and damaging the Plaintiffs' "good will" with its lending institution.

59.    In early March of 2004 RAAC had decided to fund the Plaintiffs' first intended "Requisition # 5," and its manager, Darnell Moses, wrote a letter on March 8, 2004, stating to the Honorable Terrence O'Brien that it was preparing to deposit the amount requested to cover the money need to perfect the Plaintiffs' appeal.

60.    Thereafter, the Honorable Terrence O'Brien signed an order drafted by Michael Yablonski, that provided the Plaintiffs appeal would be perfected upon the Plaintiffs doing one of two things, either:

1)    having the sum of $468,575.37 deposited into the Prothonotary and "the submission of the *County solicitor's* written legal opinion that the transfer is legal and enforceable; or"

2)    the filing with the Prothonotary of a bond by an approved surety that satisfies the requirements of Pa.R.C.P. 1701 et. seq.

(*Emphasis supplied*).

61.    On March 17, 2004, Patrick S. Healy, the special counsel of the RAAC, *i.e.*, its solicitor, wrote the Honorable Terrence O'Brien stating his written legal opinion that the transfer is legal and enforceable.

62.    On March 19, 2004, Onorato, at the behest of Yablonski, and the other

11

co-conspirators, stopped RAAC from placing the sum of $468,575.37 into the Prothonotary office.  Shortly thereafter, the County solicitor opined to the media that RAAC was not obligated to cover the Plaintiffs requisition per their contract with RAAC.

63.    On March 24, 2004, the Plaintiffs were forced to deposit the amount of approximately four-hundred-sixty-nine-thousand dollars ($469,000.00) in the County Prothonotary's Office in order to perfect its appeal.

64.    The amount of approximately four-hundred-sixty-nine-thousand dollars ($469,000.00) was hastily put together by the Plaintiffs from money it had intended to spend on the airport redevelopment project.

65.    Throughout the balance of 2004, the Plaintiffs filed series of motions requesting that the Honorable Terrence O'Brien clarify his previous order so as to permit the substitution of the opinion previously submitted on behalf of RAAC by Mr. Healy on March 17, 2004 for the "county solicitor's written legal opinion," as was intentionally requested by Yablonski. It was also noted that the county solicitor never wrote a legal opinion as to the matter, but confined his comments to only the media.

66.    On December 16, 2004, the Honorable Terrence O'Brien denied the Plaintiffs' motion for clarification and the Plaintiffs sought an appeal to the order to the Superior Court of Pennsylvania.

67.    On January 14, 2005, RAAC intervened in the Plaintiffs' appeal, submitting a false declaration by Davin in support of their intervention.  Therein Davin alleged to have "personal knowledge of the matters stated in this Affidavit," yet Davin was not involved in the negotiation or implementation of the loan agreement, and had no personal knowledge regarding it or its terms or circumstances.

12

68.    In 2004, in an effort to discredit the Plaintiffs, the Defendant Onorato hired and/or directed the lobbyist, Clark, and/or his lobbying company, BCA, to disseminate false and misleading information regarding the Plaintiffs to political officials and potential business associates of the Plaintiffs.

69.    In 2004, in an effort to prevent the Plaintiffs from further funding the airport and airpark development, the Defendant Onorato directed Davin to meet with Kuehn and other officials of Management Science to further disrupt the Plaintiffs contractual relations.

70.    In 2003 and 2004, Yablonski and McKeegan, both shareholders and/or employees of MUSL, in an effort to prevent the Plaintiffs from funding the SETech settlement and/or litigation disrupted the Plaintiffs contractual relations with its financial partners, *i.e.*, it lending institutions.

71.    The interference of Yablonski and McKeegan, included a concerted effort with Onorato, Davin and Strul to prevent RAAC from disbursing the monies that it promised to provide the Plaintiff, RAP, if said monies were required.

72.    Kuehn and Management Science, in compliance with the scheme of Onorato and Davin, made certain public comments regarding the Plaintiffs, in an effort to further discredit and disparage the Plaintiffs.

73.    McKeegan contacted the Plaintiffs' primary lending institution in an effort to interfere with the Plaintiffs' contractual relations, seeking to further harm the Plaintiffs' "good will."

74.    Strul contacted the Plaintiffs' primary lending institution in an effort to interfere with the Plaintiffs' contractual relations, seeking to further harm the Plaintiffs'

13

"good will."

75.     Yablonski drafted the order to the Honorable Terrence O'Brien regarding

the opinion of the "county solicitor" in an effort to further delay the Plaintiffs from

obtaining the monies available to them in order to perfect the SETech appeal.

### COUNT I - VIOLATION OF CIVIL RIGHTS
### PURSUANT TO 42 U.S.C. § 1983
### Rock Ferrone and Rock Airport of Pittsburgh, L.L.C. v.
### Dan Onorato, Dennis Davin, Maurice Strul, Allegheny County and the
### Redevelopment Authority of Allegheny County

76.     The Plaintiffs incorporate paragraphs 1 through 75 by reference, as fully

as if they were set forth at length herein.

77.     Such actions are in violation of the Plaintiffs' Civil Rights, namely the right

to privacy, the right to contract without undue government interference, the right to be

secure in ones papers or things or on any other basis protected by the Constitutions

and laws of the United States of America and the Commonwealth of Pennsylvania.

78.     The incidents specifically complained of are a part of an ongoing

campaign to deprive the Plaintiffs of their property and liberty interests, as guaranteed

by the Constitution of the United States, specifically their right to be free to pursue an

occupation without undue government interference, and their right to utilize their

property for that purpose.

79.     The official conduct engaged in by the Defendants, and specifically

referred to within this Complaint in Civil Action, was intentionally directed toward the

Plaintiffs and their business in an effort to injure and cause damage to the Plaintiffs,

disparage the Plaintiffs' business and discourage patronage of the Plaintiffs' business

14

with the goal of forcing the Plaintiffs out of business, in violation of the Plaintiffs' right to pursue an occupation, or was in wanton, reckless or gross disregard of those rights.

80.   The official conduct engaged in by the Defendants was intentionally directed toward the Plaintiffs and the Plaintiffs' business to discourage the Plaintiffs from engaging in a Constitutionally protected right, namely their right under the First Amendment of the United States Constitution to privacy, or was in wantonly, reckless or grossly negligent disregard of that right.  As a result of the Defendants' actions, the Plaintiffs have been deprived of their right to so act under the protection afforded by the First Amendment.

81.   The official conduct engaged in by the Defendants was intentionally directed toward the Plaintiffs and the Plaintiffs' business, or was in wanton, reckless or negligent disregard of the Plaintiffs' rights, namely their rights under the Fourth Amendment to the United States Constitution to be free from unreasonable and unlawful search and seizure, including their right to privacy.

82.   The official conduct engaged in by the Defendants was directed toward the Plaintiffs and the Plaintiffs' business for the purpose of depriving them of their rights as guaranteed under the Fourteenth Amendment to the United States Constitution to be afforded Equal Protection of the laws, specifically, the right to not have the law enforced in a selective fashion against them, and their right not to have the law enforced in a selective fashion against them in retaliation for exercising their Constitutionally protected rights.

83.   The official conduct engaged in by the Defendants was directed toward the Plaintiffs and the Plaintiffs' business for the purpose of depriving them of their rights

as guaranteed under the Fourteenth Amendment to the United States Constitution to be afforded Equal Protection of the laws, specifically, not to be the subject of unreasonable state action as a result of conducting business freely.

84.    The official conduct engaged in by the Defendants was directed toward the Plaintiffs and the Plaintiffs' establishment for the purpose of depriving the Plaintiffs of their rights as guaranteed under the Fourth and Fourteenth Amendments of the United States Constitution, namely the right to engage in a lawful enterprise, specifically those rights as delineated within this Complaint in Civil Action.

85.    The Defendants failed to adequately supervise the actions or inactions of the employees of the County and RAAC, and failed to provide and maintain adequate training for it employees; this failure was one of the proximate causes of the violations of the Civil Rights of the Plaintiffs as detailed herein.

86.    The County, through Onorato, Davin and Strul were aware of ongoing incidents and actions by themselves and other persons unknown to the Plaintiffs, which deprived the Plaintiffs of their Civil Rights, and failed to take any steps to abate or otherwise stop the actions of said Defendants, failed to take any remedial actions, and exhibited deliberate indifference to the Civil Rights of the Plaintiffs which formed governmental policy, practice and custom, and which is another one the proximate causes of the violations of the Plaintiffs' Civil Rights.

87.    The Defendants occupy positions of responsibility and knew or should have known of the aforesaid official conduct, and have failed to act to stop or prevent the actions which violated the Plaintiffs' rights. This deliberate indifference resulted in, and was another one proximate causes of the violations of the Civil Rights of the

16

Plaintiffs as detailed herein.  The conduct of these government officials "shocks the conscience" of any reasonable person.

88.    The County, acting by and through its employees and officials, including those named as individual Defendants and other persons unknown to the Plaintiffs, pursuant to governmental custom, practice and policy which was so permanent and well-settled that it constituted practice or policy which had the force and effect of law, knew or should have known of the aforesaid official conduct of its officials and its employees, and the risks associated with it, and having the power to correct these conditions, willfully, deliberately, and with wanton gross negligence and reckless disregard failed to act to prevent the harm to the Plaintiffs.  This failure to act constitutes a custom, practice and policy which has resulted in the violations of the civil rights of the Plaintiffs as detailed herein, rendering the Defendants liable to the Plaintiffs pursuant to 42 U.S.C. § 1983.

89.    The selective official action to which the Plaintiffs have been subjected by the Defendants violates the Plaintiffs' right to Equal Protection of the laws since its objective is a forbidden one, namely, interference with Plaintiffs' fundamental rights, specifically herein and the right to conduct business with one's property and to pursue an occupation without undue governmental interference.

90.    The selective official action to which the Plaintiffs have been subjected by the Defendants violates the Plaintiffs' rights under the First Amendment to the United States Constitution to privacy, to liberty to contract, property and the pursuit of an occupation.

91.    The Plaintiffs are subject to the exercise of official power and actions to

which similarly situated persons are not subject by the Defendants.

92.    Further, the Defendants have sought to impermissibly link, base and determine government benefits, procedures, actions and decisions on unconstitutional conditions in violation of procedural and substantive due process, which requires disinterested decision making and exercise of official action based on the facts exhibited in a particular situation, as opposed to political pressure, bias, hostility or personal gain.

93.    The Defendants' actions are in further contravention of the Plaintiffs' Due Process right to be free from retaliatory actions by the government for the exercise of a Constitutionally protected right in that the exercise of government powers directed against the Plaintiffs are arbitrary, capricious and in retaliation for Plaintiffs' exercise of their rights guaranteed them under the Constitutions and laws of the United States of America and the Commonwealth of Pennsylvania.

94.    The constitutional and civil rights of the Plaintiffs which have been violated by the Defendants are well established, and any reasonable and responsible public official would know or should know that said rights are well established and not in question.

95.    The actions and inactions of the Defendants constitute a policy, practice or custom of the County in that the incidents complained of are ongoing and typical of the past actions and inactions of the Defendants.

96.    As a direct and proximate result of the Defendants' conduct, which violates the civil rights of the Plaintiffs, the Plaintiffs have and continue to suffer damages, including, but not limited to, loss of business, loss of profits, commercial

disparagement and disparagement of reputation, as well as being constructively

prevented from fully exercising their rights as guaranteed under the Constitution of the

United States and the constitution of the Commonwealth of Pennsylvania.

WHEREFORE, Plaintiffs request an award in favor of the Plaintiffs and against

the Defendants, jointly and severally, in an amount in excess of $75,000, plus punitive

damages as against the non-governmental Defendants, and an award of attorneys fees

and costs pursuant to 42 U.S.C. § 1988.

### COUNT II - CONSPIRACY PURSUANT TO 42 U.S.C. § 1985(3)
#### Rock Ferrone and Rock Airport of Pittsburgh, L.L.C. v. Dan Onorato, Dennis Davin and Maurice Strul.

97.   The Plaintiffs incorporate paragraphs 1 through 96 by reference, as fully

as if they were set forth at length herein.

98.   The Defendants, Onorato, Davin and Strul, and other persons presently

unknown to the Plaintiffs, have met, discussed and agreed to engage in the course of

conduct detailed within this Complaint in Civil Action, and have agreed to illegitimately

utilize their official power of the County and RAAC, in furthering their action pursuant to

a conspiracy.

99.   Onorato solicited the support of his co-conspirators as Chief Executive of

the County, to encourage, initiate, and otherwise engage the official power of the

County, for illegitimate purposes, specifically, to harass, intimidate or otherwise violate

the civil rights of the Plaintiffs for illegal action, unrelated to any legitimate purposes of

the government.

100.   Specifically, Onorato, by and through his authority as the Chief Executive

of the County, and otherwise, illegitimately engaged, by conspiring with the other

individual Defendants, Davin, Strul, Clark, Yablonski, McKeegan and Kuehn, in pursuit of illegal action, specifically, to weaken or close the Plaintiffs' businesses.

101.   As a result of the Defendants' conspiracy and actions to illegitimately employ the official power of the County and RAAC in pursuit of an unconstitutional goal, the Plaintiffs have been damaged by harm to reputation, loss of business, loss of income, legal fees and expenses related to actions of the Defendants, and other damages which have been incurred as the result of the Defendants' actions.

102.   The official conduct engaged in by the Defendants, as alleged herein, was directed toward the Plaintiffs and the Plaintiffs' business for the purpose of depriving them of their rights as guaranteed under the Fourteenth Amendment to the United States Constitution to be afforded equal protection of the laws, specifically, not to be the subject of unreasonable state action.

103.   The Defendants met, discussed and agreed to, without legitimate governmental purpose, employ the official power of the County and RAAC, to use the tactics and take the actions described within this Complaint in Civil action for the common purpose of violating the Plaintiffs' civil rights.

104.   The conduct of the Defendants, namely, to agree in conspiracy with one another to illegitimately utilize their official power, by interfering with the Plaintiffs' contractual relations and disparaging the Plaintiffs is a continuing and ongoing course of conduct, constituting a governmental policy, practice and custom, with no legitimate governmental purpose, which may be continuing up to and including the present time.

WHEREFORE, Plaintiffs request an award in favor of the Plaintiffs and against the Defendants, jointly and severally, in an amount in excess of $75,000, plus punitive

damages against the non-governmental Defendants, and an award of attorneys fees

and costs pursuant to 42 U.S.C. § 1988.

**COUNT III - NEGLECT TO PREVENT CONSPIRACY**
**PURSUANT TO 42 U.S.C. § 1986**
**Rock Ferrone and Rock Airport of Pittsburgh, L.L.C. v.**
**Dan Onorato, Dennis Davin and Maurice Strul**

105.   The Plaintiffs incorporate paragraphs 1 through 104 by reference, as fully

as if they were set forth at length herein.

106.   The County and RAAC, and its officials, were aware of the ongoing

pattern of deprivation of the Plaintiffs' rights and violations of the Plaintiffs' civil rights by

Onorato, Davin and Strul, and other persons presently unknown to the Plaintiffs.

107.   The County and RAAC, and its officials, were aware of the ongoing

pattern of deprivation of the Plaintiffs' rights and violation of the Plaintiffs' civil rights by

Onorato, Davin and Strul, and other persons presently unknown to the Plaintiffs, which

deprived the Plaintiffs of their Civil Rights, and, although having said knowledge, failed

to take any steps to abate or otherwise stop the actions of said Defendants, failed to

take any remedial actions, and exhibited deliberate indifference to the Civil Rights of the

Plaintiffs. Said inaction formed governmental policy, practice and custom, and which is

another of the proximate causes of the continuing violation of the Plaintiffs' Civil Rights.

108.   Further, the Defendants were and are aware of the discussions between

and among various Defendants regarding the plan and conspiracy to violate the

Plaintiffs' civil rights.

109.   Further, the Defendants knew or should have known of the aforesaid

problems and misconduct, and the risks associated with it, and having the power,

21

authority and duty to correct these conditions, willfully, deliberately, and with gross negligence and reckless disregard of the Plaintiffs' Civil Rights failed to act to prevent harm to the Plaintiffs.

110.   The Defendants, having the power to do so, failed to prevent or aid in preventing the commission of the various acts which violated the civil rights of the Plaintiffs by the conspiracy, or the effects thereof, and passively acquiesced in said actions by neglecting or refusing to prevent them from occurring or aiding in their prevention.

WHEREFORE, the Plaintiffs request in favor of the Plaintiffs and against the Defendants, jointly and severally, in an amount in excess of $75,000.

## COUNT IV - INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS
### Rock Ferrone and Rock Airport of Pittsburgh, L.L.C. v.
### Dan Onorato, Dennis Davin, Maurice Strul, Brian D. Clark, Michael Yablonski, Kevin McKeegan, Meyer, Unkovic & Scott, L.L.P., Alfred A. Kuehn and Management Science Associates, Inc.

111.   The Plaintiffs incorporate paragraphs 1 through 110 by reference, as fully as if they were set forth at length herein.

112.   The Defendants, Onorato, Davin, Strul, Clark, Yablonski, McKeegan, MUSL, Kuehn and Management Science, have intentionally induced or otherwise intentionally caused third parties not to perform contracts that said third parties had with the Plaintiffs or to which the Plaintiffs had prospective contractual relations with and from which the Plaintiffs would have benefitted.

113.   The Defendants, Onorato, Davin, Strul, Clark, Yablonski, McKeegan, MUSL, Kuehn and Management Science, have forced these third parties to choose one

course of conduct rather than another.

114.   The Defendants, Onorato, Davin, Strul, Clark, Yablonski, McKeegan, MUSL, Kuehn and Management Science, have committed acts otherwise wrongful and tortious, including defamation and misrepresentation.

115.   As a result of the conduct of the Defendants, Onorato, Davin, Strul, Clark, Yablonski, McKeegan, MUSL, Kuehn and Management Science, the Plaintiffs have suffered the pecuniary loss of the benefits of the contractual relations, they have also suffered themselves pecuniary losses as a result of the aforedescribed conduct, in addition to the harm to the Plaintiffs' respective reputations, and Ferrone has suffered emotional distress as a result of the conduct of the Defendants, Onorato, Davin, Strul, Clark, Yablonski, McKeegan, MUSL, Kuehn and Management Science.

116.   The conduct of the Defendants, Onorato, Davin, Strul, Clark, Yablonski, McKeegan, MUSL, Kuehn and Management Science, served no legitimate purpose.

117.   The conduct of the Defendants, Onorato, Davin, Strul, Clark, Yablonski, McKeegan, MUSL, Kuehn and Management Science, was not privileged.

118.   The conduct of the Defendants, Onorato, Davin, Strul, Clark, Yablonski, McKeegan, MUSL, Kuehn and Management Science, served no societal interest and only advanced their personal pecuniary interests; while the overall society interest sought to be protected by this claim is to protect the Plaintiffs against interference of their legitimate pursuit of gain and public interest.

WHEREFORE, Plaintiffs request an award in favor of the Plaintiffs and against the Defendants, jointly and severally, in an amount in excess of $75,000, including any available relief in law, including punitive damages against the Defendants.

## COUNT V - COMMERCIAL DISPARAGEMENT
### Rock Ferrone and Rock Airport of Pittsburgh, L.L.C. v.
### Dan Onorato, Dennis Davin, Brian D. Clark, Brian D. Clark and Associates, Alfred A. Kuehn and Management Science Associates, Inc.

119.   The Plaintiffs incorporate paragraphs 1 through 118 by reference, as fully as if they were set forth at length herein.

120.   On numerous occasions, the Defendants, Onorato, Davin, Clark, Kuehn and Management Science published statements, *i.e.*, made statements to third parties, regarding the Plaintiffs' businesses which were false and disparaging, and which the Defendants published with the intention to cause the Plaintiffs injury and damages, including pecuniary loss or with the recognition that publication of such statements would or would likely result in injuries and damages, including pecuniary loss for the Plaintiffs.

121.   Defendants maliciously, knowingly and with reckless disregard for the truth, published statements about the Plaintiffs and the Plaintiffs' business:

      1)    In retaliation for the Plaintiffs' exercise of their constitutionally protected rights, specifically, those rights as detailed elsewhere in this Complaint in Civil Action; and

      2)    in an effort to hamper the Plaintiffs' business pursuits.

122.   As a direct and proximate result of the Defendants' actions, the Plaintiffs have suffered verifiable injuries and damages, including pecuniary losses, including, but not limited to, loss of business, loss of revenue, loss of income and loss of "good will."

123.   The Plaintiffs' injuries and damages were the result of the gross, wanton, reckless and outrageous conduct of the individual and corporate (non-governmental)

Defendants', and an award of punitive damages in this matter is justified.

WHEREFORE, Plaintiffs request an award in favor of the Plaintiffs and against

the Defendants, jointly and severally, in an amount in excess of $75,000, including any

available relief in law, including punitive damages against the Defendants.

### COUNT VI - INVASION OF PRIVACY
### Rock Ferrone and Rock Airport of Pittsburgh, L.L.C. v.
### Dan Onorato, Dennis Davin, Maurice Strul, Kevin McKeegan, Meyer, Unkovic & Scott, L.L.P., Alfred A. Kuehn and Management Science Associates, Inc.

124.    The Plaintiffs incorporate paragraphs 1 through 123 by reference, as fully

as if they were set forth at length herein.

123.    The Defendants intentionally intruded upon the solitude and seclusion of

the Plaintiffs by seeking and obtaining sensitive financial information of the Plaintiffs by

contacting their partners and financial institutions.

124.    The intrusion was highly offensive to the Plaintiffs.

125.    The conduct of the Defendants, as aforedescribed was wanton and

deliberately indifferent and in total disregard to the rights of the Plaintiffs in that an

award of punitive damages is appropriate.

126.    As a direct and proximate result of the intrusion, the Plaintiffs have

suffered those injuries and damages that have been incorporated by reference herein.

WHEREFORE, Plaintiffs request in favor of the Plaintiffs and against the

Defendants, jointly and severally, in an amount in excess of $75,000, including any

available relief in law, including punitive damages against the Defendants.

## COUNT VII - CIVIL CONSPIRACY
**Rock Ferrone and Rock Airport of Pittsburgh, L.L.C. v.
Dan Onorato, Dennis Davin, Brian D. Clark, Brian D. Clark and Associates,
Michael Yablonski, Kevin McKeegan, Meyer, Unkovic & Scott, L.L.P., Alfred A.
Kuehn and Management Science Associates, Inc.**

127.   The Plaintiffs incorporate paragraphs 1 through 126 by reference, as fully as if they were set forth at length herein.

128.   Onorato, Davin, Strul, Clark, BCA, Yablonski, McKeegan, MUSL, Kuehn and Management Science, and other persons presently unknown to the Plaintiffs, have met, discussed, agreed and otherwise conspired to intentionally interfere with the Plaintiffs' contractual relations, to commercially disparage the Plaintiffs' business and to invade the Plaintiffs' privacy for their own uses and purposes, including violating the Plaintiffs' civil rights, together all with common purpose.

129.   Onorato, Davin, Strul, Clark, BCA, Yablonski, McKeegan, MUSL, Kuehn and Management Science, and other persons presently unknown to the Plaintiffs, solicited, caused or otherwise acted to commit the acts alleged within this Complaint in Civil Action which did interfere with the Plaintiffs' contractual relations, commercially disparage the Plaintiffs' business and invade their privacy.

130.   As a result of the conspiracy of the Defendants Onorato, Davin, Strul, Clark, BCA, Yablonski, McKeegan, MUSL, Kuehn and Management Science, *i.e.*, the actions of Onorato, Davin, Strul, Clark, BCA, Yablonski, McKeegan, MUSL, Kuehn and Management Science, and other persons presently unknown to the Plaintiffs, the Plaintiffs have been damaged by harm to reputation, loss of business, loss of income, loss of "good will," legal fees and expenses related to actions of the Defendants, and

26

other damages which have been incurred as the result of the Defendants' actions.

131.   The Plaintiffs' injuries and damages were the result of the gross, wanton, reckless and outrageous conduct of the Defendants', and an award of punitive damages in this matter is justified in order to deter such conduct in the future.

WHEREFORE, Plaintiffs an award in favor of the Plaintiffs and against the Defendants, jointly and severally, in an amount in excess of $75,000, including any available relief in law, including punitive damages against the Defendants.

### COUNT VIII - BREACH OF CONTRACT
### Rock Airport of Pittsburgh, L.L.C. v. the Redevelopment
### Authority of Allegheny County

132.   The Plaintiff, RAP, incorporate paragraphs 1 through 131 by reference, as fully as if they were set forth at length herein.

133.   RAP, as aforedescribed, has a loan agreement in effect with RAAC.

134.   Pursuant to the express terms of loan, RAP made a request to RAAC, in the form of "Requisition #5" dated December 12, 2003 and January 6, 2004, for a portion of the loan proceeds to pay SETech for services it allegedly rendered at RAP.

135.   RAAC had a duty to by way of its promise to RAP, RAP's acceptance of the terms of the offer of RAAC, and RAP's reliance on the promise of RAAC to forward the payment of the promised sum in the form of loan proceeds.

136.   RAP paid RAAC good and proper consideration for the loan proceeds in the form of interest payments to RAAC.

137.   RAAC breached or otherwise violated the terms of the agreement by not disbursing the funds to RAP in a timely manner.

138.   As a direct and proximate result of the breach or otherwise violations of

27

the terms of the agreement by RAAC, RAP suffered pecuniary loss, as well as good will

and other damages.

WHEREFORE, Plaintiffs request and award in favor of the Plaintiffs and against

the Defendant, RAAC, in an amount in excess of $75,000, including any available relief

in law, including specific performance.

E.   **Jury Trial Demanded**

A jury trial is demanded as to all issues which may be tried before a jury.

Respectfully submitted,

TARASI, TARASI & FISHMAN, P.C.

By: _____

Gianni Floro, Esquire
PA ID No. 85837

Attorney for the Plaintiffs
510 Third Avenue
Pittsburgh, PA 15219
P:    412-391-7135
F:    412-471-2673

# CIVIL COVER SHEET 05-0484

JS 44 (Rev. 11/04)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Rock Ferrone and Rock Airport of Pittsburgh, L.L.C.

**DEFENDANTS** DAN ONORATO, individually and officially, DENNIS DAVIN, individually and officially MAURICE STRUL, individually and officially ALLEGHENY COUNTY, REDEVELOPMENT AUTHORITY OF ALLEGHENY COUNTY BRIAN D. CLARK, BRIAN D. CLARK & ASSOCIATES MICHAEL YABLONSKI KEVIN MCKEEGAN MEYER, UNKOVIC & SCOTT, L.L.P., ALFRED A. RUEHM MANAGEMENT SCIENCE ASSOCIATES, INC.

**(b)** County of Residence of First Listed Plaintiff **Allegheny**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant **Allegheny**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE. IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number) Gianni Floro, TARASI, TARASI & FISHMAN, P.C., 510 Third Avenue Pittsburgh, PA 15219
412-391-7135

Attorneys (If Known) Michael Wojcik, Esq.
300 Fort Pitt Common Bldg.
445 Fort Pitt Blvd.
Ptt, PA 15219

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|                                | PTF | DEF |                                                      | PTF | DEF |
|--------------------------------|-----|-----|------------------------------------------------------|-----|-----|
| Citizen of This State          | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State       | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation                       | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☒ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): See attached

Brief description of cause: See attached

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ in excess of $75,000

CHECK YES only if demanded in complaint: JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): Judge Donetta W. Ambrose
Magistrate Judge Ila Jeanne Sensenich

DOCKET NUMBER C.A. 05-303

DATE 04·12·05

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

JS 44AREVISED OCTOBER, 1993

IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THIS CASE DESIGNATION SHEET MUST BE COMPLETED

**PART A**

This case belongs on the (_____Erie_____Johnstown (X) Pittsburgh) calendar.

ERIE CALENDAR - If cause of action arose in the counties of Crawford, Elk, Erie, Forest, McKean, Venang
1.
or Warren, OR any plaintiff or defendant resides in one of said counties.

2. JOHNSTOWN CALENDAR - If cause of action arose in the counties of Bedford, Blair, Cambria, Clearfield or
Somerset OR any plaintiff or defendant resides in one of said counties.

3. Complete if on ERIE CALENDAR: I certify that the cause of action arose in _____ County and
that the_____resides in_____County.

4. Complete if on JOHNSTOWN CALENDAR: I certify that the cause of action arose in_____
County and that the_____resides in_____County.

**PART B** (You are to check ONE of the following)

1. _X_ This case is related to Number _05-303_ Judge _Ambrose/Sensenich_

2. _____ This case is not related to a pending or terminated case.

**DEFINITIONS OF RELATED CASES:**

CIVIL: Civil cases are deemed related when a case filed relates to property included in another suit or involves the
same issues of fact or it grows out of the same transactions as another suit or involves the validity or infringement
of a patent involved in another suit

EMINENT DOMAIN: Cases in contiguous closely located groups and in common ownership groups which will
lend themselves to consolidation for trial shall be deemed related.

HABEAS CORPUS & CIVIL RIGHTS: All habeas corpus petitions filed by the same individual shall be deemed
related. All pro se Civil Rights actions by the same individual shall be deemed related.

**PART C**

1. CIVIL CATEGORY (Place x in only applicable category).

1.   ( )   Antitrust and Securities Act Cases
2.   ( )   Labor-Management Relations
3.   ( )   Habeas Corpus
4.   (X)   Civil Rights
5.   ( )   Patent, Copyright, and Trademark
6.   ( )   Eminent Domain
7.   ( )   All other federal question cases
8.   ( )   All personal and property damage tort cases, including maritime, FELA, Jones Act, Motor
           vehicle, products liability, assault, defamation, malicious prosecution, and false arrest
9.   ( )   Insurance Indemnity, contract and other diversity cases.
10.  ( )   Government Collection Cases (shall include HEW Student Loans (Education),
           VA Overpayment, Overpayment of Social Security, Enlistment Overpayment (Army, Navy, etc.),
           HUD Loans, GAO Loans (Misc. Types), Mortgage Foreclosures, S.B.4. Loans, Civil Penalties and
           Coal Mine Penalty and Reclamation Fees.)

I certify that to the best of my knowledge the entries on this Case Designation Sheet are true and correct

Date: _4/12/05_

_____ ATTORNEY AT LAW

NOTE: ALL SECTIONS OF BOTH SIDES MUST BE COMPLETED BEFORE CASE CAN BE
PROCESSED.

**U.S. Civil Statutes:** First Amendment; Fourth Amendment; Fourteenth Amendment; Constitution of the Commonwealth of Pennsylvania; Article I, Sections 1, 2, 3 and 26. 42 U.S.C. §§ 1983, 1985 and 1986

**Brief description of cause:** The various acts, omissions and conspiracies alleged herein to have been committed are a part of a wrong wrought upon the Plaintiffs by the Defendants.