IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Rock Ferrone and Rock Airport of Pittsburgh, L.L.C. | ) |
| | ) |
| | )Civil Action No. 05-0484 |
| Plaintiffs, | ) |
| | )Chief Judge Ambrose/ |
| v. | )Magistrate Judge Sensenich |
| | ) |
| | )Re: Docs. # 46, 48, 49, 51, |
| DAN ONORATO, individually and | )          and 54 |
| officially, DENNIS DAVIN, | ) |
| individually and officially, | ) |
| MAURICE STRUL, individually | ) |
| and officially, ALLEGHENY | ) |
| COUNTY, REDEVELOPMENT AUTHORITY | ) |
| OF ALLEGHENY COUNTY, BRIAN D. | ) |
| CLARK, BRIAN D. CLARK AND | ) |
| ASSOCIATES, MICHAEL YABLONSKI, | ) |
| KEVIN MCKEEGAN, MEYER, UNKOVIC | ) |
| & SCOTT, L.L.P., ALFRED A. KUEHN, | ) |
| and MANAGEMENT SCIENCE | ) |
| ASSOCIATES, INC. | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

I.          **RECOMMENDATION**

IT IS RECOMMENDED that the Motions to Dismiss filed by Defendants be granted as to Plaintiffs' federal claims.

IT IS FURTHER RECOMMENDED that this Court decline to exercise jurisdiction over the remaining state law claims, and dismiss them without prejudice.

II.          **REPORT**

Rock Ferrone and Rock Airport of Pittsburgh, L.L.C., hereinafter "Plaintiffs", filed this case against various public

and private entities as well as individuals associated with these entities, hereinafter collectively "Defendants". (Amend. Compl., Doc. # 43 at ¶¶ 17-42.)  These Defendants include two public entities: Allegheny County and the Redevelopment Authority of Allegheny County ("RAAC"). (*Id.* at ¶¶ 28-31.) Three officials related to these entities were named in their individual and official capacities: Dan Onorato, the Chief Executive of Allegheny County; Dennis Davin, the Director of the Department of Economic Development of Allegheny County; and Maurice Strul, the Assistant Director of the Department of Economic Development of Allegheny County. (*Id.* at ¶¶ 20-27, 32-33.) Further, two private companies and the presidents of those companies were also named as Defendants: Brian Clark, president of Defendant Brian Clark and Associates (hereinafter collectively "Clark Defendants"); Alfred Kuehn ("Kuehn"), president of Defendant Management Science Associates, Inc. ("MSA"), collectively ("Kuehn Defendants"). (*Id.* at ¶¶ 34-36, 40-42). Finally, attorneys Yablonski and McKeegan, and their employer Meyer, Unkovic & Scott, LLP, were also named as Defendants (hereinafter collectively "MUS"). (*Id.* at ¶¶ 37-39)

Plaintiffs' Amended Complaint lists eight counts. (See Doc. # 43.)  Counts I, II and III allege violations of the Civil Rights Statutes, codified at 42 U.S.C. §§ 1983, 1985(3), and 1986. The remaining Counts aver state law claims of intentional interference with contractual relations (Count IV),

2

commercial disparagement (Count V), invasion of privacy (Count VI), civil conspiracy (Count VII), and breach of contract (Count VIII). (Amend Compl. Doc. # 43.) Plaintiffs seek injunctive relief and damages. (*Id.* at ¶ 8.)

Four motions to dismiss were filed. The first motion, filed by Defendant Allegheny County, and Defendants Dan Onorato, Dennis Davin, and Maurice Strul in their individual and official capacities (hereinafter "County's Motion") and joined by the Clark Defendants and Defendant RAAC, argues that Plaintiffs failed to state a claim for relief under the Civil Rights Statutes, Sections 1983, 1985(3), and 1986, as codified in Title 42 of the United States Code. (See Docs. # 47 at ¶¶ 3-5, 50 and 54.) Defendants also assert that they are immune from suit on the state tort claims. (*Id.* at ¶ 6.)

The second motion, filed by Defendants RAAC and Dennis Davin in his official capacity, and joined by the Clark Defendants (hereinafter "RAAC Motion"), claims that dismissal of Plaintiffs claim is required under the Rooker-Feldman doctrine because the issue in the case has already been litigated. (Docs. # 50 at 2, 54.) Further, Defendants argue that Plaintiffs have failed to state a claim against them because they had the contractual power to reject disbursements. (*Id.*)

The third motion, filed by Defendants Kuehn and MSA, and joined by the Clark Defendants (hereinafter "Kuehn Motion"),

asserts that Plaintiffs lack standing and also argues for the
application of the Rooker-Feldman doctrine. (Docs. # 48 at 2,
54.) Further, Defendants claim that because Plaintiffs assert
only state law claims against them, this Court does not have
proper supplemental jurisdiction over them. (*Id.*) Defendants
finally argue that Plaintiffs' complaint fails to properly allege
a cause of action against them under state law. (*Id.*)

The final motion to dismiss was filed by the MUS
Defendants. (Doc. # 51.) In the MUS Motion, Defendants argue that
Plaintiffs' failed to state a claim against them under state law.
(*Id.*)

## A.   Plaintiffs' Allegations

Plaintiffs allege that the acts, omissions, and
conspiracies began on or about November 2003 and continued
through the date when the complaint was filed, April 12, 2005.
(Amend. Compl., Doc. # 43 at ¶ 43.) Plaintiffs developed the
former West Penn Airport and its surrounding properties to create
the RockPointe Business Park. (*Id.* at ¶¶ 44.) During the
development of RockPointe Business Park, the engineer hired for
work on the project, S.E. Technologies (hereinafter "SETech"),
exceeded the amount contractually approved for it to complete its
work on the development. (*Id.* at ¶¶ 46-48.) As a result of this
cost overrun, Plaintiffs refused to pay and SETech sued to

4

collect these funds in the Court of Common Pleas of Allegheny County. (*Id.* at ¶¶ 47-48.)

Plaintiffs had received public funding to pay for a portion of the work through economic development loan agreements with RAAC. (*Id.* at ¶¶ 47-49.) Due to the cost overrun issue, the economic loan agreement entered into in the summer of 2003 expressly stated that "security for an appeal of the matter would be an eligible expense under the Cash Flow Projections at the Cash Disbursement section of its Development Cost items." (*Id.* at ¶ 49.) The work that SETech sued to recover payment for "was an 'eligible expense' for site development purposes," and as such, "payment to SETech was also available in the ordinary course of the loan's disbursement through the established requisition process." (*Id.*)

The lawsuit between SETech and Plaintiffs was settled near the end of 2003, and Plaintiffs made an application to "RAAC for funds to cover a letter of credit in order to settle the matter . . . ." (*Id.* at ¶¶ 52-53.) The requisition was received on December 12, 2003, and under the terms of the loan agreement, RAAC had five days to deny or approve the requisition. (*Id.* at ¶¶ 54-55.) On January 6, 2004, Plaintiffs were notified that the requisition was lost, and Plaintiffs resubmitted the requisition that same day. (*Id.* at ¶¶ 56-57.)

On January 26, 2004, the settlement "collapsed due to the failure of RAAC to pay the requisition . . . ." (*Id.* at ¶ 58.) In March of 2004, RAAC decided to fund Plaintiffs' requisition. (*Id.* at ¶ 60.) A letter was sent to the state court judge handling the case, which confirmed that the money Plaintiff RAP needed to perfect the appeal was to be deposited by RAAC. (*Id.*) The state court judge issued an order which set the amount to be posted and required that either an opinion letter authored by the county solicitor stating that the transfer from RAAC was enforceable was to be submitted with RAAC's funds, or that a bond by an approved surety was to be filed instead. (*Id.* at ¶ 61.)

On March 17, 2004, RAAC's special counsel authored the opinion letter, but two days later Onorato, at the behest of other co-conspirators, stopped the transfer of funds by RAAC. (*Id.* at ¶¶ 62-63.) Plaintiffs deposited their own funds to perfect the appeal. (*Id.* at 64.) Plaintiffs repeatedly attempted to have the state court judge clarify his order, but ultimately in December of 2004 these requests were denied, and Plaintiffs appealed. (*Id.* at ¶¶ 66-68.)

In 2004, Onorato hired the Clark Defendants, a lobbying company, to discredit the Plaintiffs and directed Davin to meet with Defendants MSA and Kuehn to disrupt Plaintiffs' contractual relations. (*Id.* at ¶¶ 69-70.) Attorneys Yablonski and McKeegan, in a concerted effort with the County Defendants,

disrupted Plaintiffs contractual relations with its lending institutions in an effort to prevent Plaintiffs from funding the settlement, and the Kuehn Defendants made public statements regarding Plaintiffs to further discredit them. (*Id.* at ¶¶ 71-73.) Specifically, Attorney McKeegan and Assistant Director Strul contacted the Plaintiffs' lending institution in an effort to interfere with Plaintiffs' contractual relations. (*Id.* at ¶¶ 73-75.) Attorney Yablonski drafted the order to require the opinion letter in an effort to further delay the Plaintiffs from obtaining the funds to perfect the settlement. (*Id.* at ¶ 76.)

### B.  Discussion

Defendants' multiple motions argue various theories for dismissal. These arguments can be categorized as arguments challenging justiciability, arguments seeking dismissal for failure to state a federal cause of action under the Civil Rights Statutes, and various arguments for dismissal of the state law claims.

### 1. Justiciability

Defendants assert three grounds for dismissal, each of which they claim prevents this Court from evaluating the case on its merits: Plaintiffs lack standing, the Rooker-Feldman doctrine bars Plaintiffs' claims, and Plaintiffs have improperly invoked supplemental jurisdiction. Because these are threshold

7

justiciability issues, they must be evaluated before Defendants'
other grounds for dismissal are addressed. *See Steel Co. v.
Citizens for a Better Environment*, 523 U.S. 83, 93-94 (1998)(A
Court must establish Article III jurisdiction as threshold
matter, and can not exercise 'hypothetical jurisdiction' to
dismiss a case on its merits.)

Plaintiffs invoke federal jurisdiction, and thus
they have the burden of establishing jurisdiction is proper.
*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).
However, Plaintiffs satisfy that burden "in the same way as any
other matter on which the plaintiff bears the burden of proof,
*i.e.*, with the manner and degree of evidence required at the
successive stages of the litigation." *Lujan*, 504 U.S. at 561.
Thus, in this case, for the purposes of determining
jurisdictional issues, "we must accept as true all material
allegations set forth in the complaint, and must construe those
facts in favor of the complaining party." *Storino v. Borough of
Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003).
Application of this standard reveals that Defendants'
jurisdictional arguments are without merit.

### a. Standing

The Kuehn Defendants argue that Plaintiffs lack
standing because each Plaintiff has failed to identify the
particular harm it has suffered. (Kuehn Brief, Doc. # 48 at 8.)

They further argue that Plaintiff Ferrone, as the president and owner of Plaintiff RAP, can not assert RAP's claims as his own. (*Id.*) These general arguments are best characterized as challenges to the constitutional standing of both plaintiffs, and a challenge to Plaintiff Ferrone's prudential standing to raise claims on behalf of Plaintiff RAP. However, Defendants' standing arguments are without merit.

The doctrine of standing has both "constitutional and prudential components." *Oxford Assocs. v. Waste Sys. Auth.,* 271 F.3d 140, 145 (3d Cir. 2001). The Supreme Court has articulated three elements for constitutional standing: injury in fact, causation and redressability. *Lujan*, 504 U.S. at 560-61. The Kuehn Defendants seem to argue that Plaintiffs have not alleged an injury in fact. (Doc. # 48 at 8.) An injury in fact is a violation of a legally protected interest that is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560. Both Plaintiffs unquestionably assert injury resulting from violation of their legally protected interests. For example, Plaintiff RAP alleges that Defendants breached their contract with it when it did not receive funds it sought under the loan agreement. Therefore, it suffered a pecuniary loss as a result of this breach. (See Doc. # 43 at 35-36.) Further, Plaintiff Ferrone alleges that he was defamed by state actors and private entities as part of a

9

governmental conspiracy for the purpose of commercial disparagement. (*Id.* at 23-35.) (See *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)). Therefore, each plaintiff has satisfied the constitutional standing requirement by alleging actual injury resulting from Defendants' conduct.

Next, Defendants argue that Plaintiff Ferrone lacks prudential standing to the extent that he asserts the injuries of Plaintiff RAP as his own. (Doc. # 49 at 8.) The doctrine of prudential standing embraces two judicially imposed limitations on federal jurisdiction: the plaintiff must suffer an actual injury, and that injury must be within the zone of interests protected by the constitution or statute. See *Allen v. Wright*, 468 U.S. 737, 751 (1984). Defendants do not challenge Plaintiff RAP's prudential standing, they only argue that Plaintiff Ferrone does not have prudential standing to raise injuries of Plaintiff RAP. However, Plaintiff RAP asserts its own rights, and the injuries it alleges are the type that arguably implicate the Constitution. Thus, Plaintiff RAP has satisfied the requirements for prudential standing. When one plaintiff has standing, the Court does not need to address the standing of the other plaintiffs with identical positions. See *Secretary of Interior v. California*, 464 U.S. 312, 319 n.3 (1984), accord *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, --- U.S. ---, 2006 WL 521237, *4 n.2  (Mar. 6, 2006.). Thus, Plaintiff RAP has

alleged facts which satisfy the requirements for prudential standing.

### b. The Rooker-Feldman Doctrine

The motions by Kuehn and RAAC argue that the Rooker-Feldman doctrine bars Plaintiffs' claims. The Rooker-Feldman doctrine deprives a federal district court of jurisdiction over a case that had previously been litigated in state court. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Defendants argue that the state court case that deprives this Court of jurisdiction over this case was the lawsuit by SETech (a non-party to this case) against Plaintiff RAP seeking payment for charge orders that had not been approved by RAP. (See Amend. Compl., Doc. # 43 at ¶ 43.)(*Id.* at ¶¶ 52-53.) That suit was settled and Plaintiff RAP requested funds from Defendant RAAC to pay the settlement. (*Id.* at ¶¶ 54-55.) The settlement "collapsed due to the failure of RAAC to pay the requisition . . . ." (*Id.* at ¶ 58.) Later, RAAC decided to fund Plaintiffs' requisition. (*Id.* at ¶ 60.) A letter was sent to the state court judge handling the case, which confirmed that the money Plaintiff RAP needed to perfect the appeal was to be deposited by RAAC. (*Id.*) The state court judge issued an order which set the amount to be posted by Plaintiff RAP and required that either an opinion letter authored by the county solicitor stating that the transfer from RAAC was enforceable was to be submitted with RAAC's funds,

11

or that a bond by an approved surety was to be filed instead. (*Id.* at ¶ 61.) It is this order that Defendants cite as a "state court judgment" that requires the application of the Rooker-Feldman Doctrine in this case. (Doc. # 50 at 6.) However, the Rooker-Feldman doctrine is inapplicable to this case.

　　　　In 2005, the United States Supreme Court reaffirmed the narrow scope of the Rooker-Feldman doctrine. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005). The Court observed that it had only applied the doctrine twice: once in *Rooker v. Fidelity Trust Co.,* when a suit was commenced in federal court seeking to have a state court judgment nullified; and the second time was in *District of Columbia Court of Appeals v. Feldman,* in which the losers in state court sued the state court in federal court for their loss. *Exxon*, 544 U.S. at 283, discussing *Rooker*, 263 U.S. 413 (1923) and *Feldman*, 460 U.S. 462 (1983). The *Exxon* Court commented that the Rooker-Feldman doctrine has been "[v]ariously interpreted in the lower courts" and that "the doctrine has sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases" to impermissibly override "Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. §1738." *Exxon*, 544 U.S. at 283. The

Court explained that when it found the federal suits improper in

*Rooker* and *Feldman*:

> [W]e emphasized that appellate jurisdiction to reverse or modify a state-court judgment is lodged, . . . exclusively in this Court. Federal district courts, we noted, are empowered to exercise original, not appellate, jurisdiction. Plaintiffs in *Rooker* and *Feldman* had litigated and lost in state court. Their federal complaints, we observed, essentially invited federal courts of first instance to review and reverse unfavorable state-court judgments. We declared such suits out of bounds, *i.e.*, properly dismissed for want of subject-matter jurisdiction.

*Id.* at 283-84. The Court went on to conclude that:

> The Rooker - Feldman doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

*Id.* at 284. Thus, the Rooker-Feldman doctrine is applicable only

when (1) the case is brought by the party who lost in state

court; (2) the injury caused by the state court judgment is the

subject matter of the federal suit; (3) the judgement of the

state court was rendered before the district court proceedings

commenced; and (4) the federal case invites the district court to

review and reject the state court judgment. See *Id.* Defendants

have failed to establish almost all of these elements.

First, Defendants argue that the Rooker-Feldman doctrine bars this action because, in a collateral state court proceeding, an unreasoned, permissive state court order was issued, which merely <u>permitted</u> RAAC to post the money judgment as security for an appeal <u>if</u> such payment was accompanied by a opinion letter by the county solicitor that concluded such a transfer was enforceable.  (See Doc. # 50 at 6-7, and Doc. # 48 at ¶ 8.) The order alternatively allowed Rock Airport to post a bond. (See *Id.*) Defendants cite this permissive order, call it a "judgment" and then argue that this order defeats this Court's subject matter jurisdiction under the Rooker-Feldman doctrine. As support for this argument, Defendants reference three more state court documents.[1] (See Doc. # 50, exs. 2,4,7, and 12.) However, nothing cited by Defendants remotely involves a judgment on the merits of any issue pending in this federal case.

Further, Defendants fail to establish that this suit

---

[1] "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). These four items are matters of public record: 1) an order staying the execution and giving the *option* for RAAC to post the security; 2) an order *granting* a stay of a sheriff sale pending appeal because the security *had been* posted (albeit not from RAAC); 3) an order *summarily denying* Plaintiff RAP's Motion to Clarify the Supercedeas (no rationale provided); and 4) the only <u>opinion</u> issued by the state court(s) *summarily denied* the motions for Supercedaes as *moot* because the underlying issues on appeal had been decided. (See Doc. # 49, exs. 2,4,7, and 12.)

is based on injuries resulting from a state court judgment. See *Exxon*, 544 U.S. at 284. Plaintiffs' assert civil rights violations and state law claims for tortious conduct and breach of contract.  (See Doc. # 43.) Plaintiffs' alleged injuries were not caused by a state-court judgment. The entry of a judgment by the state court merely triggered the alleged contractual duty of a third party to pay the judgment or a settlement. The judgment itself did not cause the alleged injury in this case.

        Defendants have also failed to establish that the Complaint challenges a state court judgment. Plaintiffs do not seek to invalidate the judgment won by SETech against Plaintiff RAP. Not one of the orders cited by Defendants can be characterized as a decision about the contractual relationship between RAAC and the Plaintiffs. Further, the only opinion cited by Defendants can not be characterized as a judgment regarding the contractual obligations or relationships between the parties in this case because the Pennsylvania Superior Court denied the application for Supercedeas <u>as moot</u>. (See Doc. # 49, ex 12 at 18, fn 5.)[2] Thus, Defendants have not shown that the Rooker-Feldman doctrine bars this action.

---

[2] Although the Pennsylvania Superior Court made <u>no determination on the merits</u> of the Application, Defendants inexplicitly suggest otherwise by their omission of this fact in their brief. (See Doc. # 50 at 7).

### c. Supplemental Jurisdiction

By statute, federal district courts have supplemental jurisdiction[3] over claims that are so related to claims over which they have original jurisdiction "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The Kuehn Defendants argue that this Court lacks subject matter jurisdiction over them because Plaintiffs did not allege a federal cause of action against them and the state claims are not related to the underlying federal claims. (Doc. # 48 at 12.) However, Plaintiffs allege that the Kuehn Defendants acted in conspiracy with state actors to violate their constitutional rights. Plaintiffs assert that:

> 101. Specifically, Onorato, by and through his authority as the Chief Executive of the County, and otherwise, illegitimately engaged, by conspiring with the other individual Defendants, Davin, Strul, Clark, Yablonski, McKeegan and Kuehn, in pursuit of illegal action, specifically, to weaken or close the Plaintiffs' businesses.

> 102. As a result of the Defendants' conspiracy and actions to illegitimately employ the official power of the County and RAAC in pursuit of an unconstitutional goal, the Plaintiffs have been damaged by harm to reputation, loss of business, loss of income, legal fees and expenses related to actions of the Defendants, and other damages which

---

[3] With some exceptions which are not relevant here.

16

have been incurred as the result of the
Defendants' actions.

(Doc. # 43 at ¶¶ 101-102)(emphasis added). The Kuehn Defendants
are named as conspirators under Plaintiffs' Section 1985(3)
claim. Further, Plaintiffs specify that both MSA and Dr. Kuehn
(the Kuehn Defendants) caused damage to their reputations and
loss of business. (See Doc. # 43 at ¶ 113, m-p.) This conduct is
the same conduct which Plaintiffs claim violated their
constitutional rights. (See Doc. # 43 at ¶ 102.)

Plaintiffs sufficiently allege, for the purposes of
federal question jurisdiction, that Defendants, including the
Kuehn Defendants, conspired to deprive them of their
constitutional rights under Section 1985(3). Further, Plaintiffs'
state law claims against Defendants arise from the same facts and
circumstances as the federal claims. Therefore, this Court has
federal question jurisdiction over all Defendants, including the
Kuehn Defendants.

## 2. Failure to State a Claim

As previously discussed, the claims in this case are
justiciable. However, as discussed below, Plaintiffs have
attempted to create federal constitutional claims out of garden
variety state law torts. Plaintiffs have failed to allege a
viable federal constitutional claim to support a Section 1983
claim, and thus their Section 1985(3) and 1986 claims are also
insufficient. As a result, this Court should decline to exercise

supplemental jurisdiction over the only remaining claims, which are based on state law.

### a. Standard for Motion to Dismiss under Rule 12(b)(6)

When ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the Court is required to accept as true all allegations made in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the plaintiff. *See Blaw Knox Retirement Income Plan v. White Consol. Indus.*, 998 F.2d 1185, 1188 (3d Cir. 1993); *Ditri v. Coldwell Banker Residential Affiliates*, 954 F.2d 869, 871 (3d Cir. 1992). The issue is not whether the plaintiff will ultimately prevail, but rather whether he can support his claim by proving *any* set of facts that would entitle him to relief. *See Hishon v. King & Spalding*, 467 U.S. 69 (1984). Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *See Port Auth. v. Arcadian Corp*, 189 F.3d 305, 311 (3d Cir. 1999).

To survive a motion to dismiss, the plaintiff must set forth information from which each element of a claim may reasonably be inferred. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). It is the defendant who bears the burden of establishing that the complaint fails to state a claim upon which relief can be granted. *Gould Elecs., Inc. v. United States*, 220

18

F.3d 169, 178 (3d Cir. 2000). Further, in this case, it is also

important to note:

> The court may consider "undisputedly
> authentic document[s] that a defendant
> attaches as an exhibit to a motion to
> dismiss if the plaintiff's claims are
> based on the [attached] document[s]." *Id.*
> Additionally, "documents whose contents
> are alleged in the complaint and whose
> authenticity no party questions, but
> which are not physically attached to the
> pleading may be considered." *Pryor v.
> Nat'l Collegiate Athletic Ass'n*, 288 F.3d
> 548, 560 (3d Cir.2002); *see also U.S.
> Express Lines, Ltd. v. Higgins,* 281 F.3d
> 383, 388 (3d Cir.2002) ( "Although a
> district court may not consider matters
> extraneous to the pleadings, a document
> integral to or explicitly relied upon in
> the complaint may be considered without
> converting the motion to dismiss into one
> for summary judgment.") (internal
> quotation omitted). However, the court
> may not rely on other parts of the record
> in making its decision. *Jordan v. Fox,
> Rothschild, O'Brien & Frankel*, 20 F.3d
> 1250, 1261 (3d Cir.1994).

*Boone v. Pennsylvania Office of Vocational Rehabilitation,* 373

F.Supp.2d 484, 490 (M.D. Pa. 2005). Defendant RAAC has attached

to its Motion to Dismiss, a copy of the loan agreement dated

August 25, 2003 by which it loaned Plaintiffs $1,515,366.11 for

the development of Rockpointe Business Airpark. (See Loan

Agreement, Doc. # 49, ex. 13 at 7 (section 3.03(b))). This

agreement is central to Plaintiffs' claims for breach of contract

and civil rights violations, and Plaintiffs have not questioned

its authenticity. Further, the allegations in the complaint do

not contradict this document.  Therefore, this agreement will be considered by the Court in evaluating Defendants' Motions to Dismiss.

### b. Section 1983

Section 1983 provides a procedural tool for individuals to bring a federal cause of action against any person who, acting under color of state law, has deprived them of their federal rights.  42 U.S.C.A. § 1983 (West 2003).  This section states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C.A. § 1983.

To state a claim under Section 1983, Plaintiffs must meet two threshold requirements.  They must aver:  (1) that the alleged misconduct was committed by a person acting under color of state law; and (2) that as a result, they were deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *West v. Atkins*, 487 U.S. 42, 48 (1988).

20

Here, Defendants do not challenge the sufficiency of the allegation that they were acting under color of state law. Instead, Defendants move to dismiss for failure to state a claim arguing that the complaint does not allege a recognized constitutional violation. Plaintiffs allege that their rights secured by the First, Fourth and Fourteenth Amendments were invaded by Defendants' conduct and that their privacy interests under these Amendments were also violated. (Doc. # 43 at ¶ 6.)

### i. Privacy

Plaintiffs assert in Count I that Defendants' actions violated their rights under "the First Amendment to the United States Constitution to privacy . . . ." (Doc. # 43 at ¶ 91); their Fourth Amendment right to privacy (*Id.* at ¶ 82); and privacy rights under the Fourteenth Amendment, including the right to be free to pursue an occupation and engage in a lawful enterprise without undue governmental interference. (*Id.* at ¶¶ 79-80, 85.) Further, Plaintiffs assert in Count VI a state law claim for "invasion of privacy" based on Defendants having sought and obtained financial information by contacting their partners and financial institutions. (*Id.* at ¶ 127.)

The concept of a constitutional right to privacy encompasses multiple amendments. See *Roe v. Wade*, 410 U.S. 113, 152 (1973). While a "right of privacy" is not expressly guaranteed by the federal constitution, federal jurisprudence has

created "zones of privacy" that are linked to more specific
constitutional guarantees. *Griswold v. Connecticut*, 381 U.S. 479,
484 (1965). The right to privacy has been historically described
by the Supreme Court:

> The Constitution does not explicitly
> mention any right of privacy. In a line
> of decisions, however, going back perhaps
> as far as . . . [1891], the Court has
> recognized that a right of personal
> privacy, or a guarantee of certain areas
> or zones of privacy, does exist under the
> Constitution. In varying contexts, the
> Court or individual Justices have,
> indeed, found at least the roots of that
> right in the First Amendment, . . . in
> the Fourth and Fifth Amendments, . . . in
> the penumbras of the Bill of Rights, . .
> . in the Ninth Amendment, . . . or in the
> concept of liberty guaranteed by the
> first section of the Fourteenth Amendment
> . . . .

*Roe,* 410 U.S. at 152 (citations omitted). Plaintiffs aver
Defendants have violated their privacy interests under the First,
Fourth and Fourteenth Amendments and therefore, each of these
privacy interests will be examined.

### ii. First Amendment

The First Amendment provides that "Congress shall
make no law respecting an establishment of religion, or
prohibiting the free exercise thereof; or abridging the freedom
of speech, or of the press; or the right of the people peaceably
to assemble, and to petition the Government for a redress of
grievances." U.S. Const. amend. I. Plaintiffs generally claim

that Defendants' actions violated their rights under "the First Amendment to the United States Constitution to privacy, liberty to contract, property and the pursuit of an occupation." (Doc. # 43 at ¶ 91.)  Plaintiffs' claims based on "liberty to contract, property and the pursuit of an occupation" are more appropriately analyzed under the Fourteenth Amendment. See generally *Meyer v. Nebraska*, 262 U.S. 390, 399, (1923).

When violation of a specific First Amendment right is alleged (freedom of assembly, speech, religion/association, petition, or the press), a right to privacy may flow from that right. See *Griswold v. Connecticut*, 381 U.S. at 482-84. However, Plaintiffs' complaint does not allege the violation of any of those protected First Amendment rights. (See Doc. # 43.) Consequently, Plaintiffs have not alleged a violation of a First Amendment privacy interest and as to this claim, Defendant's Motion to Dismiss should be granted.

### iii. Fourth Amendment

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."  U.S. Const. amend. IV. In this case, Plaintiffs assert that Defendants' conduct in stopping RAAC from paying their expenses which were necessary to perfect their appeal, constituted a 'seizure' in violation of Plaintiffs' Fourth

Amendment rights and privacy interests. A Fourth Amendment
seizure can occur even when there has been no search.  See *Soldal
v. Cook County*, 506 U.S. 56, 67 (1992). "A 'seizure' of property
occurs when there is some meaningful interference with an
individual's possessory interests in that property." *United
States v. Jacobsen*, 466 U.S. 109, 113 (1984). In order for a
seizure to violate the Fourth Amendment it must be unreasonable,
measured by carefully balancing government and private interests.
*Soldal,* 506 U.S. at 71.  When evaluating a Fourth Amendment
claim, "[w]hat matters is the intrusion on the people's security
from governmental interference." *Id.* at 69. Thus, a viable Fourth
Amendment seizure claim requires meaningful and unreasonable
interference with an individual's property or possessory
interests. See *Jacobsen*, 466 U.S. at 113 and *Soldal,* 506 U.S. at
69.

    Plaintiffs' Fourth Amendment argument is that when
Defendants prevented them from receiving funds from RAAC for
their appeal after RAAC had decided to fund it, that the
withholding of the funds "amounts to a seizure for purposes of
the Fourth Amendment". (Doc. # 57 at 8, see also Doc. # 43 at ¶
82.) Thus, for this Court to find a Fourth Amendment claim, it
would be necessary to find that Plaintiffs had a protected
property or possessory interest in the grant proceeds and that
withholding the funds amounted to a seizure under the Fourth

24

Amendment. In their brief, Plaintiffs argue that the loan proceeds were the property of Plaintiff RAP and that when Defendants prevented the disbursement of these funds, they were injured. (Doc. # 57 at 7-8.) However, in their complaint, Plaintiffs aver facts that suggest that the loan proceeds are "public funding" and that expenses must be "eligible" under the agreement in order to be paid. (Amend. Compl., Doc. # 43 at ¶¶ 47 and 49.) Further, they expressly aver that they had to make an "application to the RAAC for funds" and that the contract terms allowed RAAC to "deny or approve the requisition." (*Id.* at ¶¶ 53 and 55.) They cite no authority for their position that the funds were their property before they were expended for their benefit by RAAC.

It is axiomatic that to have a Fourth Amendment claim Plaintiffs must possess some level of property or possessory interest in the item seized. A property or possessory interest for Fourth Amendment purposes has not been expressly defined, but the federal courts have applied several general standards in making this determination. The United States Supreme Court declined to find a Fourth Amendment possessory interest in an item when "neither ownership nor possession" of the item was shown. *United States v. Miller*, 425 U.S. 435, 440 (1976). The Court of Appeals for the Third Circuit has held that substantial control, unfettered access, and actual possession over an item creates a possessory interest that is protected by the Fourth

Amendment. See *Baker*, 221 F.3d at 443. Finally, a Fourth
Amendment possessory interest has been described as follows:
"[w]hile outright ownership is not required . . . there must be
'clear evidence of continuing possession and control, as well as
no evidence that the [defendant] obtained the [item]
illegitimately.'" *United States v. Ryan*, 128 F.Supp. 2d 232, 235
(E.D. Pa. 2000), citing *United States v. Baker*, 221 F.3d 438, 443
(3d Cir. 2000). Thus, in order to state a claim for a Fourth
Amendment violation, Plaintiffs must allege facts that would
support an inference of outright ownership or possession;
legitimate and continuing possession and control; or substantial
control and unfettered access to the loan proceeds.

        Under the facts alleged, this court can not infer
that Plaintiffs had a property or possessory interest in the loan
proceeds. The Complaint does not support an inference that
Plaintiffs enjoyed actual possession, ownership, or control of
the funds, nor substantial control and unfettered access to it.
(See Compl., Doc. # 43 at ¶¶ 58-63.)  It was Defendant RAAC that
owned the loan proceeds. Plaintiffs merely allege that their
request for funds was denied. They do not allege any facts that
would support an inference that they had an unqualified right or
interest in the funds. (See *Id.*)

        Second, the facts alleged in the Complaint do not
support an inference that Defendants' alleged interference with

Plaintiffs' receipt of the loan proceeds qualifies as a seizure, or even if it was a seizure, that the seizure was unreasonable. First, the funds were never taken from Plaintiffs possession or control. They simply remained in the possession and control of RAAC. (See Compl., Doc. # 43 at ¶ 55.) Plaintiffs did not have a legitimate expectation of security against governmental inference in the grant proceeds because a government agency was responsible for managing the grant. (Amend. Compl., Doc. # 43 at ¶¶ 49,54-63.) See *Soldal,* 506 U.S. at 69. This is an area in which government involvement and interference is clearly anticipated by the loan recipient. Plaintiffs have not cited any authority supporting their theory that they were subjected to a seizure in violation of the Fourth Amendment. Therefore, as to Plaintiffs' claim of an unreasonable seizure, Defendants' Motion to Dismiss should be granted.

Finally, Plaintiffs argue that their right to privacy under the Fourth Amendment has been infringed. This argument fails for the same reasons that their Fourth Amendment claim of an unreasonable seizure fails. Assuming for the sake of argument that Plaintiffs had properly alleged a Fourth Amendment violation, they still have to allege facts that would allow this Court to infer that they had a legitimate expectation of privacy in the item seized. See *Smith v. Maryland*, 442 U.S. 735, 740 (1979)(superseded in part, not relevant here, by statute). Plaintiffs do not have an expectation of privacy in the loan

27

proceeds because the funds were allegedly 'seized' (actually retained) by RAAC, the entity which held, managed and controlled them. (See Docs. # 43 at ¶¶ 49-63, # 57 at 7.) Plaintiffs did not have any legitimate expectation of privacy to in the funds held by RAAC, a governmental entity.

Even if the Court were to consider Plaintiffs' factual allegations of a violation of state privacy law (that Defendants obtained "sensitive financial information of Plaintiffs by contacting their partners and financial institutions") as a potential violation of the Fourth Amendment, we would have to find them insufficient. (See Amend. Compl., Doc. # 43 at ¶ 127.) The Supreme Court has held in *United States v. Miller* that an individual does not possess a Fourth Amendment right of privacy in his or her bank records. *Miller*, 425 U.S. at 442 (superseded in part by statute).[4]  Further, when a party voluntarily discloses sensitive information to a third party, that third party can convey it to the government without

---

[4] *Miller* has been superceded to some extent by the Right to Financial Privacy Act, codified at volume 12 of the United States Code, section 3401(3).  However, this statute is inapplicable in this case. The Act applies to a "government authority," and this term does not include state or local government agencies, only "any agency or department of the United States, or any officer, employee, or agent thereof." 12 U.S.C. § 3401(3). See also *United States v Zimmerman*, 957 F Supp 94 (N.D. W.Va. 1997). (Right to Financial Privacy Act does not apply to requests for information from state and local governmental agencies.) Further, the Supreme Court reiterated and upheld the central holding in *Miller* in the case of *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 743 (1984), which postdates the Right to Financial Privacy Act.

implicating the Fourth Amendment. *Miller,* 425 U.S. at 443, accord *Jerry T. O'Brien, Inc.*, 467 U.S. at 743. Thus, Plaintiffs have failed to allege a privacy interest that is protected by the Fourth Amendment.

In summary, Plaintiffs have failed to allege a violation of the  Fourth Amendment and as to this claim Defendants' Motion to Dismiss should be granted.

### iv.   14th Amendment

The Fourteenth Amendment provides that the states shall not "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV. Plaintiffs allege that Defendants deprived them of their rights to procedural due process, substantive due process, and equal protection in connection with their rights to "conduct business with one's property and to pursue an occupation without undue governmental interference," their "right to engage in a lawful enterprise," and their liberty to contract without governmental interference. (Compl., Doc. # 43 at ¶¶ 83-85, 90-91).

Defendants argue that Plaintiffs have failed to allege a protected property or liberty interest, have failed to allege facts to support a procedural due process claim, and have

29

failed to allege facts to support an equal protection claim. (Docs. # 50 at 9, # 47 at 5.)

### 1) Due Process

The Due Process Clause of the Fourteenth Amendment "provides heightened protection against government interference with certain fundamental rights and liberty interests." *McCurdy v. Dodd*, 352 F.3d 820, 825 (3d Cir. 2003) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). However, "[t]he Fourteenth Amendment is not 'a font of tort law to be superimposed upon whatever systems may already be administered by the States.'" *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 400 (3d Cir. 2000) quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976). The liberty or property interest allegedly invaded by the state must be the type that is afforded constitutional protection. See *Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

A Section 1983 claim must be based a violation of a right secured by federal statute or the Constitution. See 42 U.S.C.A. § 1983.  The court must determine whether the interests allegedly invaded are the type that are protected by federal law. Plaintiffs argue that they have a property interest in the loan proceeds, a liberty interest in the right "to direct the course of their lawful enterprise without undue influence of government"

and a privacy interest. (Doc. # 57 at 10.)[5]  The United States Supreme Court has instructed:

> The types of interests that constitute "liberty" and "property" for Fourteenth Amendment purposes are not unlimited; the interest must rise to more than "an abstract need or desire," . . . and must be based on more than "a unilateral hope," . . . . Rather, an individual claiming a protected interest must have a legitimate claim of entitlement to it. Protected liberty interests "may arise from two sources - - the Due Process Clause itself and the laws of the States."

*Kentucky Dep't. of Corrections,* 490 U.S. at 460 (citations omitted). Therefore, this Court must first evaluate whether the liberty, property and privacy interests asserted by Plaintiffs are protected by the federal constitution.

### a.) Property Interests

Plaintiffs argue that Defendants deprived them of their right to due process under the Fourteenth Amendment because the loan proceeds they did not receive qualify as government benefits they were denied due to political bias and in

---

[5] Plaintiffs assert that "the term 'property' includes every sort of interest which a citizen may posses (sic)" and thus the loan proceeds are property which is protected under the Due Process Clause. (Doc. # 57 at 10, citing *Almota Farmers Elevator & Warehouse Co. v. United States,* 409 U.S. 470 (1973)). However, *Almota Farmers* defined property under the Fifth Amendment taking clause, not property under the Fourteenth Amendment. See 409 U.S. at 473. Further, it is well established that not all property interests are protected by the Fourteenth Amendment. *Unger v. National Residents Matching Program*, 928 F.2d 1392, 1398-99 (3d Cir. 1991); and *Kentucky Dep't of Corrections*, 490 U.S. at 460.

retaliation for exercising their constitutional rights. (Doc. # 43 at ¶¶ 93-94.) However, it is well settled that "[t]he procedural component of the Due Process Clause does not protect everything that might be described as a 'benefit'." *Town of Castle Rock v. Gonzales*, --- U.S. ---, 125 S.Ct. 2796, 2803 (2005). In order for Plaintiffs to have a protected property interest in a government benefit, they must allege facts sufficient to support the inference that they have a legitimate claim of entitlement to it. See *Town of Castle Rock*, 125 S.Ct. at 2803.

In this case, the terms of the loan agreement establish that RAAC had the discretion to determine whether to release the funds. (See Loan Agreement, Doc. # 49, ex. 13 at 7 (section 3.03(b))). Plaintiffs also aver in their complaint that RAAC could deny their request for funds. (Doc. # 43 at ¶ 55). The United States Supreme Court has explained that "[o]ur cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock,* 125 S.Ct. at 2803. Therefore, Plaintiffs do not have a protected property interest in the loan funds as a government benefit.

Further, Plaintiffs did not have a constitutionally protected contractual property interest in the loan agreement. Even assuming that the loan agreement qualifies as a contract

32

entered into with the state, this type of contract does not automatically create a constitutionally recognized property interest. A recognized property interest is only created in two types of contracts: contracts that confer a protected status, or contracts that can be terminated only for cause. *Linan-Faye Constr. Co. v. Housing Auth.*, 49 F.3d 915, 932 (3d Cir. 1995). Plaintiffs have not alleged, nor do the terms of the loan agreement provide, that the loan agreement afford them a protected status or that it can only be terminated for cause. (See Doc. # 49 at ex. 13.) Therefore, the loan agreement does not qualify as a property interest protected by the Fourteenth Amendment.

Plaintiffs also aver that Defendant RAAC failed to follow procedures contained within the loan agreement when it denied their requisition for funds for their appeal, presumably as a basis for alleging a property interest. (Amend. Compl., Doc. #43 at ¶ 55.) However, a mere claim of entitlement to a procedure is not a recognized property interest. "[I]t is well established that 'an entitlement to nothing but procedure' cannot 'be the basis for a property interest.'" *Robbins v. United States BLM*, 438 F.3d 1074, 1085-86 (10th Cir. 2006), citing *Town of Castle Rock*, 125 S.Ct. at 2808. The *Robbins* Court also noted phrenetically "'[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to

which the individual has a legitimate claim of entitlement.'" *Robbins*, 438 F.3d at 1086, quoting *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). Plaintiffs do not have a constitutionally protected contractual property interest in the loan agreement.

Finally, Plaintiffs' possessory interests in their business must be evaluated. It is recognized that the procedural due process clause protects possessory interests in property. See *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998). The property interests protected by procedural due process are defined by reference to state law, and this interest includes many aspects of a business. *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 674-675 (1999). Again, not all conduct related to businesses are protected by the Fourteenth Amendment. It has been determined, for example, that "the elusive property interests that are 'by definition' protected by unfair-competition law" are not protected by the Fourteenth Amendment because to do so "would violate our frequent admonition that the Due Process Clause is not merely a 'font of tort law.'" *College Sav. Bank,* 527 U.S. at 674. Specifically, the Court explained that:

> The assets of a business (including its good will) unquestionably are property, and any state taking of those assets is unquestionably a "deprivation" under the Fourteenth Amendment. But business in the sense of *the activity of doing business,* or *the activity of making a profit* is not property in the ordinary sense - - and it

34

> is only *that,* and not any business asset,
> which is impinged upon by a competitors'
> false advertising.

*College Sav. Bank,* 527 U.S. at 675. Plaintiffs have not identified any asset they were deprived of by Defendants' alleged conduct. The *College Sav. Bank* Court found activities of doing business impacted by false advertizing to be outside the scope of constitutionally protected property. Plaintiffs have not alleged that they have been deprived of a business asset because of Defendants' conduct, they allege that Defendants interfered with their business activities.

In sum, Plaintiffs have not established a constitutionally recognized property interest in the loan proceeds, the loan agreement, or in their business relationships. Consequently, they have not alleged a constitutionally protected property interest.

### b.) Liberty Interest

Plaintiffs also allege that their liberty interest in the right "to direct the course of their lawful enterprise without undue influence of government" was violated by Defendants' conduct. (Doc. # 57 at 10.) Plaintiffs further aver liberty interests in their right to "conduct business with one's property and to pursue an occupation without undue governmental interference," their "right to engage in a lawful enterprise", and interference with their liberty to contract. (Doc. # 43 at ¶¶

35

83-85, 90-91). Generally, these claims can be summarized as an interest in their 'right to pursue an occupation without undue governmental interference' and their right to be free from interference with their 'liberty to contract.' Although these interests are protected by the Constitution, not all general claims of interference with these interests have constitutional implications. The United States Supreme Court recently stated that:

> [T]he liberty guaranteed by the Fourteenth Amendment "'denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men.'"

*Conn v. Gabbert*, 526 U.S. 286, 291 (1999) quoting *Board of Regents v. Roth*, 408 U.S. 564, 572 (1972) and *Meyer,* 262 U.S. at 399. The Court explained that "[i]n a line of earlier cases" the Court has found "that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment." *Conn*, 526 U.S. at 291-92. However, this right is "subject to reasonable government regulation" and this line of cases "all deal with a complete prohibition of the right to engage in a calling. . . ."

36

*Id.* at 292. See also *Boyanowski,* 215 F.3d at 404-05 (expressly rejecting a broad interpretation of *Meyer v. Nebraska,* 262 U.S. 390 to constitutionalize all executive actions that affect the pursuit of a profession.)

Plaintiffs allege that they were subjected to undue government interference with their right to pursue an occupation by failure of RAAC to advance their loan proceeds, by the acts of Defendants Onorato, Davin, Strul, Clark, Yablonski, McKeegan, MYS, Kuehn and MSA in making disparaging and defamatory remarks to their business partners, and by interfering with their contracts with business partners.  (See Compl., Doc. # 43 at ¶ 113 a-t). These allegations do not suggest that Defendants, acting under the color of state law, created a "complete prohibition of the right to engage in a calling." *Conn*, 526 U.S. at 292. Thus, Plaintiffs have not alleged a violation of their right to pursue an occupation under the Fourteenth Amendment.

Further, Plaintiffs right to contract has not been infringed under the facts alleged. First, assuming that the loan agreement can be properly characterized as a contract with a state body, there is no general constitutional right to be protected from a government agency's breach of contract. See *Holt Cargo Sys. v. Delaware River Port Auth.*, 20 F.Supp. 2d 803, 835 (E.D. Pa. 1998). It follows that the only remaining contracts that could have been interfered with were Plaintiffs' contracts

with third parties. Plaintiffs have not alleged that Defendants passed any law that interfered with their contracts to support a claim under the Contract Clause. Instead, they allege that Defendants' tortious conduct interfered with their contracts with third parties. This would be a state law claim that does not implicate the liberty interests protected by the Constitution. Section 1983 can not be utilized to recover for a contractual interference claim. See generally *BPNC, Inc. v. Taft*, 147 Fed. Appx. 525, 530 (6th Cir. 2005)(unpublished).

Finally, Plaintiffs complain that Defendants defamed them. However, good reputation is neither a liberty nor property interest guaranteed against state deprivation. *Paul,* 424 U.S. at 711-12. See also *Puricelli v. Borough Morrisville*, 820 F.Supp. 908, 913-916 (E.D. Pa. 1993), and *Boyanowski,* 215 F.3d at 400. Even when defamation leads to monetary losses, reputation is not a constitutionally recognized liberty or property interest. See *Boyanowski*, 215 F.3d at 400, citing with approval *Siegert v. Gilley*, 500 U.S. 226 (1991). Therefore, Plaintiffs have failed to allege a deprivation of a liberty interest.

### c.) Privacy

The Supreme Court described the well established limits on the right of privacy: "only personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty,' . . . are included in this guarantee of personal

38

privacy." See *Roe*, 410 U.S. at 152. The Court of Appeals for the Third Circuit has explained that:

> The Supreme Court has ... found certain "zones of privacy" in the amendments to the Constitution, . . . and from these zones has specified that the constitutional right to privacy "protects two types of privacy interests: 'One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.'"

*C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 178 (3d Cir. 2005)(internal citations and parenthetical information omitted).

The analysis of whether the privacy interest in avoiding disclosure of personal matters has been implicated involves multiple steps. The elements in a disclosure claim are (1) an involuntary (2) disclosure that would link an individual to (3) the personal information disclosed, which (4) is of the type that a reasonable expectation of privacy would attach.[6] *See C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d at 179-181. As previously discussed, disclosure of bank records does not implicate the Constitution. See *Miller,* 425 U.S. at 443. Further, Plaintiffs complain that their business partners were questioned

---

[6] The Court of Appeals has found medical information sought by the government; medical, financial and behavioral information sought in reference to an employment decision; medical prescription records; pregnancy status; sexual orientation; and HIV-positive status all to be the type of information to which a reasonable expectation of confidentiality would attach. *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d at 179 (citing cases).

about their finances, but this questioning did not invade their right to privacy because they have not alleged that the information was the type to which a reasonable expectation of privacy would attach. See *Id.* Therefore, Plaintiffs have not alleged a violation of any constitutionally protected interest in avoiding disclosure of personal matters.

The second interest that could be implicated under the Fourteenth Amendment is the privacy interest in making certain kinds of important decisions. These 'important decisions' have been found to encompass only matters "relating to marriage, procreation, contraception, family relationships, and child rearing and education." *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d at 179, quoting *United States v. Westinghouse Electric Corp.*, 638 F.2d 570, 577 (3d Cir. 1980) and *Paul v. Davis*, 424 U.S. at 713. Plaintiffs allege that Defendants interfered with their right to conduct business and pursue an occupation. (Doc. # 43 at ¶ 90.) They have not alleged interference with protected privacy interests. Therefore, Plaintiffs have failed to allege a violation of their Fourteenth Amendment right to privacy.

In sum, the rights allegedly invaded by Defendants are not the type that are protected by the Fourteenth Amendment. Therefore, Plaintiffs' substantive and procedural due process claims fail, and Defendant's Motion to Dismiss these claims should be granted.

### 2.) Equal Protection

Plaintiffs also assert that they were denied equal protection under the law. (Compl., Doc. # 43 at ¶¶ 83-84, 90-92.) Defendants argue that the failure to identify persons treated more favorably than Plaintiffs is fatal to their equal protection claim. (Doc. # 47 at 4.) Plaintiffs contend that they alleged that similarly situated persons were not subject to the exercise of official power. (Doc. # 57 at 8, citing Compl., Doc. # 43, at ¶ 92.) Further, they argue that a class of one can bring an equal protection claim when there is no rational basis for the difference in treatment. (*Id.* citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

The Equal Protection Clause of the Fourteenth Amendment provides that states shall not "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV.  This clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, Inc., 473 U.S. 432, 439 (1985). "To prevail on an equal protection claim, a plaintiff must present evidence that [ ]he has been treated differently from persons who are similarly situated." *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003). The Equal Protection Clause does not create substantive rights. *Vacco v. Quill*, 521 U.S. 793, 799 (1997). It is designed to "secure every person within the

State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook,* 528 U.S. at 564. "If a legislative classification or distinction 'neither burdens a fundamental right nor targets a suspect class, we will uphold [it] so long as it bears a rational relation to some legitimate end.'" *Vacco,* 521 U.S. at 799.

In their complaint, Plaintiffs allege generally that their right to equal protection under the Fourteenth Amendment to the United States Constitution was violated because Defendants' objective was unconstitutional and selective. (Doc. 43 at ¶ 90). Further, they allege that similarly situated persons were treated differently. (*Id.* at ¶ 92.)  Plaintiffs also allege that the law was enforced in a selective fashion against them in retaliation for exercising their constitutional rights. (*Id.* at ¶¶ 83-84.)

To survive a motion to dismiss, the plaintiff must set forth information from which each element of a claim may reasonably be inferred. *Kost*, 1 F.3d at 183. Plaintiffs have alleged general principles of law. To establish their claim, Plaintiffs merely used legal jargon and catch phrases in their complaint, along with bare allegations of fact, which are insufficient to support an inference of an equal protection violation. For example, Plaintiffs' complaint does not include

42

any information that would allow this Court to infer that any
identifiable person or entity was treated differently than
Plaintiffs, how that different treatment occurred, or whether
that different treatment was for improper reasons. Plaintiffs'
general allegation that similar persons were treated differently,
or that the law was enforced in a selective fashion against them
does not does not create a valid equal protection claim. In fact,
the conduct complained of does not include law enforcement, but
tortious conduct on the part of state officials. Further, this
Court can not identify any exercise of a constitutional right
that would support Plaintiffs' assertion that they suffered
retaliation for exercising their constitutional rights. In sum,
Plaintiffs' complaint is devoid any information that would
support an inference that they were denied equal protection.

### v. Section 1983 Conclusion

Plaintiffs' complaint makes bare allegations of fact,
and averments of general principles of constitutional law which
are not linked in any meaningful manner to the facts of this
case. Their failure to state a claim stems not from brevity, but
from attempting to craft constitutional violations from garden
variety tort and contract claims. The United States Supreme Court
has reminded us that:

> [The plaintiff] apparently believes that
> the Fourteenth Amendment's Due Process
> Clause should *ex proprio vigore* extend to
> him a right to be free of injury wherever

43

> the State may be characterized as the
> tortfeasor. But such a reading would make
> of the Fourteenth Amendment a font of
> tort law to be superimposed upon whatever
> systems may already be administered by
> the States. We have noted the
> "constitutional shoals" that confront any
> attempt to derive from congressional
> civil rights statutes a body of general
> federal tort law . . . .

*Paul v. Davis*, 424 U.S. at 701 citing *Griffin v. Breckenridge*, 403 U.S. 88, 101-102 (1971). The Fourteenth, Fourth, and First Amendments do not extend a generalized right to be free of injury solely because the state is the alleged actor. See *Davis*, 424 U.S. at 701. Plaintiffs have failed to allege a Section 1983 violation because they have failed to allege facts which would support a constitutional violation.  Therefore, it is recommended that Count I of Plaintiffs' complaint be dismissed.

### c. Sections 1985/1986

Defendants assert that Plaintiffs' Section 1985(3) conspiracy claim is flawed by their failure to allege that Defendants' actions were motivated by racial or class based animus. (Doc. # 47 at 7). Defendants further assert that claims based on Section 1986 should be dismissed because of Plaintiffs' failure to allege a cause of action under Section 1985(3). (*Id.* at 8.)

Plaintiffs argue that they qualify as a class of one, and that the conspiracy between the individual Defendants and unknown persons was motivated by a class based animus designed to

44

deprive them of the equal protection of the laws. (Doc. # 57 at

12-13.) Section 1985(3) provides:

> If two or more persons in any State or
> Territory conspire . . . , for the
> purpose of depriving, either directly or
> indirectly, any person or class of
> persons of the equal protection of the
> laws, or of equal privileges and
> immunities under the laws; or for the
> purpose of preventing or hindering the
> constituted authorities of any State or
> Territory from giving or securing to all
> persons . . . the equal protection of the
> laws; . . . in any case of conspiracy
> set forth in this section, if one or more
> persons engaged therein do, or cause to
> be done, any act in furtherance of the
> object of such conspiracy, whereby
> another is injured in his person or
> property, or deprived of having and
> exercising any right or privilege of a
> citizen of the United States, the party
> so injured or deprived may have an action
> for the recovery of damages occasioned by
> such injury or deprivation, against any
> one or more of the conspirators.

42 U.S.C.A § 1985(3). A Section 1985(3) claim includes four

elements: a conspiracy which was "motivated by a racial or class

based discriminatory animus designed to deprive, directly or

indirectly, any person or class of persons to the equal

protection of the laws" and an act to further the conspiracy

which resulted in an injury or deprivation of another's rights or

privileges secured by citizenship. *See Lake v. Arnold*, 112 F.3d

682, 685 (3d Cir. 1997). Plaintiffs' argue that they are a class

of one for equal protection purposes. (See Doc. # 22 at 18.) They

do not further identify their class and they cite no authority

for this novel theory. The case they cite, *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) involved a Fourteenth Amendment Equal Protection Clause claim, not a Section 1985(3) conspiracy claim. The Supreme Court has discussed the "class based animus" requirement:

> To begin with, we reject the apparent conclusion of the District Court (which respondents make no effort to defend) that opposition to abortion constitutes discrimination against the "class" of "women seeking abortion." Whatever may be the precise meaning of a "class" for purposes of *Griffin's* speculative extension of § 1985(3) beyond race, the term unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors. Otherwise, innumerable tort plaintiffs would be able to assert causes of action under § 1985(3) by simply defining the aggrieved class as those seeking to engage in the activity the defendant has interfered with. This definitional ploy would convert the statute into the "general federal tort law" it was the very purpose of the animus requirement to avoid.

*Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 269 (1993). The Supreme Court's holding in Bray is instructive: a class is "something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors." Bray, 506 U.S. at 269. Plaintiffs, as a class of one, are not a group that the Supreme Court would recognize as being subject to any legitimate class based animus which would support

46

a Section 1985(3) claim. Therefore, it is recommended that the Section 1985(3) claim contained in Count II of Plaintiffs' complaint be dismissed.

Furthermore, in the absence of a valid claim for a Section 1985(3) violation, there can be no claim for failure to prevent a civil rights conspiracy violation under Section 1986. *See Bieros v. Nicola*, 839 F. Supp. 332 (E.D. Pa. 1993). Therefore, it is also recommended that the Section 1986 claim contained in Count III of Plaintiffs' complaint be dismissed.

### d. State Law Claims and Defenses

Under 28 U.S.C. § 1367(c), the district court may decline to exercise jurisdiction over remaining state law claims if it dismisses all claims over which it has original jurisdiction.  In deciding to whether or not to exercise jurisdiction, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc. v. Delaware County,* 983 F.2d 1277, 1284 (3d Cir. 1993).  Here, Plaintiffs allege claims under the Pennsylvania Constitution, as well as state common law claims.  Defendants argue multiple defenses under state law. Plaintiffs have not identified any relationship between their claims under the federal Constitution and their claims under the Pennsylvania Constitution.  Consequently, in the interest of judicial economy,

47

this Court should decline to exercise jurisdiction over the remaining state law claims.

**III.**          **CONCLUSION**

          For the foregoing reasons, IT IS RECOMMENDED that the Motions to Dismiss filed by Defendants be granted as to Plaintiffs' federal claims.

          IT IS FURTHER RECOMMENDED that this Court decline to exercise jurisdiction over the remaining state law claims, and dismiss them without prejudice.

          In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

                                        */s/ Ila Jeanne Sensenich*
                                        ILA JEANNE SENSENICH
                                        United States Magistrate Judge


Dated:       May 26, 2006

cc:          The Honorable Donetta W. Ambrose
             United States District Judge

             All parties by electronic filing

                              48